UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank Ernest LEYVA,
Defendant-Appellant.

No. 74–3565.

United States Court of Appeals,
Fifth Circuit.

June 2, 1975.

James H. Pearl, San Antonio, Tex. (Court appointed), for defendant-appellant.

William S. Sessions, U. S. Atty., Eb F. Luckel, Jeremiah Handy, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GIBSON,* THORNBERRY and AINSWORTH, Circuit Judges.

GIBSON, Circuit Judge.

Frank Ernest Leyva appeals from a judgment of conviction for criminal contempt and the resulting 35-year sentence of imprisonment to run consecutive to his 12-year state sentence for narcotics violations. Leyva was tried and convicted in October, 1973, in Texas state court of selling heroin to a federal narcotics agent and sentenced to 12 years imprisonment. On January 8, 1974, he pleaded guilty in Texas court to another sale of heroin and was sentenced to 12 years to be served concurrently with the first offense.

On January 30, 1974, Leyva was called before a federal grand jury and questioned regarding the source of the heroin he 'had sold. He claimed his Fifth Amendment privilege against self-incrimination and was discharged. Subsequently, on February 15, 1974, the Government, pursuant to 18 U.S.C. § 6003 [1] obtained an order granting Leyva use immunity. On February 19, 1974, he was recalled before the grand jury and again questioned concerning his

---

* Of the Eighth Circuit, sitting by designation.

1. 18 U.S.C. § 6003 (1970) provides:

Court and grand jury proceedings.

(a) In the case of any individual who has been or may be called to testify * * * at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony * * * which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

sales of heroin. Upon his refusal to answer, he was informed of the order granting him use immunity and given an opportunity to consult with counsel. Upon his return to the grand jury room he persisted in his refusal to answer questions.

He was then brought before District Judge Spears where the immunity order was fully explained to him and was ordered and directed by Judge Spears "to return to the Grand Jury room and to answer such questions as the Grand Jury may propound to you with the understanding that you have full and complete immunity from prosecution for whatever you may say to the Grand Jury." The grand jury members were present throughout the court proceeding and then returned to the grand jury room. Leyva was again questioned and refused to answer, whereupon he was discharged. On March 13, 1974, the same grand jury returned an indictment charging Leyva with criminal contempt in violation of 18 U.S.C. § 401(3).[2]

Trial was to a jury on August 12, 1974, and Leyva was found guilty. A sentence of 35 years imprisonment was imposed, to run consecutively to the 12 year-state sentences previously imposed. Leyva appeals and presents seven assignments of error. We consider each seriatim.

I. Defendant asserts he was denied due process in not being afforded notice and hearing before the immunity order was granted. He relies upon In re Bart, 113 U.S.App.D.C. 54, 304 F.2d 631 (D.C. Cir. 1962), a case interpreting 18 U.S.C. § 3486 to require notice and hearing. The decision in In re Bart was predicated at least in part upon the fact that under § 3486 the Government could not secure a prospective order. See 304 F.2d at 637 & n. 17. Thus, there might be something for the witness to object to at

a hearing before the immunity order was granted. Section 6003 was designed to change this result. See H.R.Rep.No. 1549, 91st Cong., 2d Sess. (1970), reprinted in 2 U.S.Code Cong. & Admin.News, pp. 4007, 4018 (1970).

 Section 3486 was repealed by the Organized Crime Control Act of 1970, Pub.L.No.91–452, Title II, § 228(a), 84 Stat. 930. 18 U.S.C. § 6003 was added by this same act and provides for a prospective order while not explicitly requiring notice to a prospective witness before grant of immunity; this is an indication that none is required. Furthermore, since the court's duties in granting the requested order are largely ministerial, when the order is properly requested the judge has no discretion to deny it. In re Grand Jury Investigation, 486 F.2d 1013, 1016 (3rd Cir. 1973), cert. denied sub nom., Testa v. United States, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); see In re Kilgo, 484 F.2d 1215, 1221 (4th Cir. 1973).

 Moreover, defendant was represented by counsel during his grand jury appearances and at the February 19th proceeding during which the court ordered him to testify. We fail to see any prejudice. See In re Kilgo, supra at 1221–22; United States v. Handler, 476 F.2d 709, 714–15 (2d Cir. 1973). The February 15, 1974, immunity order under § 6003 is not the order the defendant was accused of violating, rather it was the court's oral order of February 19, 1975. And it is settled that in contempt proceedings "the validity of the order allegedly disobeyed is not open to question in the slightest degree." Cliett v. Hammonds, 305 F.2d 565, 570 (5th Cir. 1962); see United States v. United Mine Workers, 330 U.S. 258, 293–94, 67 S.Ct. 677, 91 L.Ed. 884 (1947). This claim affords no basis for reversal.

 II. Leyva argues that the grant of use immunity was insufficient to sup-

---

**2.** 18 U.S.C. § 401 (1970) provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

\* \* \* \* \* \*

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

plant his Fifth Amendment privilege since it did not protect him against possible perjury charges arising from his prior state court testimony. We have determined that the grant of use immunity does protect a witness from prosecution for perjury antedating the immunity order and thus this argument lacks merit. Taylor v. United States, 509 F.2d 1349 (5th Cir. 1975); *accord* United States v. Watkins, 505 F.2d 545 (7th Cir. 1974); United States v. Alter, 482 F.2d 1016, 1028 (9th Cir. 1973).

■ III. Defendant contends that the failure of the court to specify which questions Leyva was to answer relegated the judicial function of determining the propriety of the questions to the grand jury and thus makes the court's order unenforceable. To support a conviction in the circumstance presented by Leyva's refusal to testify it is required only that the court unequivocally order the defendant to answer. Brown v. United States, 359 U.S. 41, 50, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), overruled on other grounds, Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965).[3] It is clear that Judge Spears' order, previously quoted, met this requirement.

■ IV. Defendant argues that his refusal was based upon a good faith but erroneous claim of his Fifth Amendment privilege and, therefore, he lacked the "contumacious intent" necessary to support a conviction. While defendant may initially in good faith have relied upon his privilege when confronted with the immunity order by the grand jury, the subsequent proceedings before Judge Spears and the unequivocal order to answer the questions propounded by the grand jury refute this assertion of good faith. There clearly was sufficient evidence to determine that defendant's refusal to comply with the court's order was deliberate and willful.

■ V. Leyva claims his right to confrontation of witnesses was violated when transcripts of the February 19th proceeding were admitted into evidence and he was not allowed to call Judge Spears as a witness. This he claims denied him the ability to fully develop the evidence. We confess an inability to understand the relevance, much less the essentiality, of Judge Spears' testimony to the defense. The transcript of the February 19th proceeding, which we have read, speaks for itself. Defendant has failed to explain in any way the necessity for calling Judge Spears as a witness and we find no error or prejudice to the defendant in this regard.

VI. Leyva argues that the court did not consider using the civil contempt sanction prior to instituting criminal contempt proceedings and thus violated the principle of Shillitani v. United States, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966), that "a court must exercise '[t]he least possible power adequate to the end proposed.'" The Government contends there is no necessity to do so since this was not a summary contempt proceeding. While the proceedings upon this contempt indictment present an appearance of some irregularity, defendant made his objection in a rather tardy fashion, and we can find no prejudice to any of his substantial rights.

The Government in pursuing this criminal contempt conviction by means of indictment ignored Fed.R.Crim.P. 42(b)[4]

---

**3.** *Brown* approved the use of the Rule 42(a) summary contempt procedure where a recalcitrant grand jury witness repeats his refusal to answer questions propounded by the grand jury in the presence of the district court after being ordered to answer. *Harris* did not question the proper application of the contempt power in such a circumstance but did require that any contempt proceeding in that circumstance follow the Rule 42(b) procedure of providing notice and hearing to the defendant.

**4.** Fed.R.Crim.P. 42 provides:

Criminal Contempt

\* \* \* \* \* \*

(b) *Disposition Upon Notice and Hearing.* A criminal contempt as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the

which "prescribes the 'procedural regularity' for all contempts in the federal regime except those unusual situations envisioned by Rule 42(a), where instant action is necessary to protect the judicial institution itself." Harris v. United States, 382 U.S. 162, 167, 86 S.Ct. 352, 355, 15 L.Ed.2d 240 (1965).

While the statute, 18 U.S.C. § 401, defines and limits the power of a court of the United States to impose punishment for contempt, Fed.R.Crim.P. 42(b) governs the procedural aspects of proceedings for criminal contempt. Carlson v. United States, 209 F.2d 209, 213 (1st Cir. 1954).

Rule 42(b) provides for the institution of criminal contempt proceedings not by indictment or information but by notice. United States v. United Mine Workers, 330 U.S. 258, 296, 67 S.Ct. 677, 91 L.Ed. 884 (1947); United States v. DeSimone, 267 F.2d 741, 743 (2d Cir.), vacated as moot, 361 U.S. 125, 80 S.Ct. 253, 4 L.Ed.2d 167 (1959); Bullock v. United States, 265 F.2d 683, 691 (6th Cir.), cert. denied, 360 U.S. 909, 79 S.Ct. 1294, 3 L.Ed.2d 1260 (1959). Rather than being an innovation dispensing with the necessity of an indictment for criminal contempt, Rule 42(b) simply made more explicit the prevailing usages at law governing the procedure to be followed in contempt proceedings. Brown v. United States, 359 U.S. 41, 50, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), overruled on other grounds, Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952).

Cases which have considered arguments that criminal contempts must be prosecuted upon indictment have uniformly rejected the idea since contempts are not crimes in the constitutional sense. See, e. g., Green v. United States, 356 U.S. 165, 184–85, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); Yates v. United States, 316 F.2d 718 (10th Cir. 1962);

United States v. DeSimone, *supra.* In fact, proceeding by indictment instead of pursuant to Rule 42(b) might be objectionable as interjecting an "independent body into the criminal contempt process which might interfere with or impede judicial disposition of such matters." United States v. Bukowski, 435 F.2d 1094, 1099 (7th Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). *But see* United States v. Mensik, 440 F.2d 1232, 1234 (4th Cir. 1971).

■ However, defendant did not object below to indictment, nor does he present this objection on appeal, except as it might be subsumed in his argument that civil contempt should have been considered. We do not believe this possible defect prejudiced any substantial right of defendant and thus does not constitute plain error requiring our review. Fed.R.Crim.P. 52(b). The Supreme Court has not precisely passed on the question of whether Rule 42(b) sets forth the exclusive method of processing a criminal contempt charge, but in Green v. United States, *supra,* the Court indicated it was not and presumably approved prosecution of criminal contempt by indictment, stating:

[I]t is clear that criminal contempts, although subject * * * to sentences of imprisonment exceeding one year, need not be prosecuted by indictment under the Fifth Amendment.

The court in United States v. Mensik, *supra,* approved prosecution of criminal contempt by indictment as long as the notice requirement of Rule 42(b) was met. In the present case the indictment gave Leyva adequate notice of the act charged as a criminal contempt. He was represented by counsel and given adequate time to prepare a defense.

In Harris v. United States, 382 U.S. 162, 165, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965), the Supreme Court stated that "the limits of the power to punish

criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United

States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. * * *

for contempt are '[t]he least possible power adequate to the end proposed.'" In the area of criminal contempt:

> This doctrine further requires that the trial judge first consider the feasibility of coercing testimony through the imposition of civil contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate.

Shillitani v. United States, 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966). *Accord*, United States v. Di Mauro, 441 F.2d 428 (8th Cir. 1971).

By not returning Leyva to the court upon his refusal to answer questions as directed by the court, the Government effectively precluded the court from exercising its discretion as to whether to proceed in civil contempt under 28 U.S.C. § 1826(a) [5] or to require a criminal contempt hearing. However, after indictment Leyva's motion to dismiss the indictment and supporting memorandum presented numerous grounds but failed to include this contention. It was not until the Government rested its case at trial, some six months after indictment that this contention was raised.

It does not appear in the record when the term of the grand jury expired, but it would have been unlikely that Leyva could have been faced with any coercive term of civil confinement at the date of trial. The trial judge rejected Leyva's argument at that time as "a totally use-less thing to do." We are not inclined to disagree with that assessment.

VII. Lastly, Leyva argues that the 35-year sentence imposed upon conviction was excessive and an abuse of discretion. The Government contends that as a matter of law the 35-year term is within statutory limits and thus permissible. 18 U.S.C. § 401 does not contain an upper limit upon sentences for criminal contempt. However, we cannot agree with the Government's position that this makes any sentence permissible. In Green v. United States, 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958), the Court stated:

> [I]n the areas where Congress has not seen fit to impose limitations on the sentencing power for contempts the district courts have a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection. The "discretion" to punish vested in the District Courts by § 401 is not an unbridled discretion. Appellate courts have here a special responsibility for determining that the power is not abused, to be exercised if necessary by revising themselves the sentences imposed.

*See also* Cheff v. Schnackenberg, 384 U.S. 373, 380, 86 S.Ct. 1523, 1526, 16 L.Ed.2d 629 (1966).

This claim is properly presented for our review,[6] and we are convinced that this is a proper case in which we should exercise our power to revise the sentence

---

**5.** 28 U.S.C. § 1826(a) (1970) provides:

Recalcitrant witnesses

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify * * * the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

**6.** The Supreme Court in Cheff v. Schnackenberg, *supra*, ruled that a sentence of 6 months imprisonment was permissible without a jury trial. "[I]n the exercise of the Court's supervisory power and under the peculiar power of the federal courts to revise sentences in contempt cases," it required a jury trial or waiver before a sentence exceeding six months could be imposed. While recognizing that the federal courts were left "at sea in instances involving greater sentences," the Court concluded that "[n]othing we have said, however, restricts the power of a reviewing court, in appropriate circumstances, to revise sentences in contempt cases tried with or without juries." 384 F.2d at 380, 86 S.Ct. at 1526.

imposed. The Government attempts to justify the sentence imposed on Leyva by reference to the public concern over heroin trafficking in San Antonio and the need to have all legal means to ensure cooperation to stem the flow of illegal drugs. However, to be shocked at the severity of the sentence in this case does not demonstrate a lack of concern regarding the drug problem or a non-recognition of the difficulties that law enforcement agencies have in enforcing these laws.

It is anomalous to find a 35-year sentence for an offense not denominated as criminal in the constitutional sense, and it is shocking to find a 35-year sentence of imprisonment consecutive to a 12-year state term imposed on a man 44 years old whose "crime" was a refusal to answer questions propounded by the grand jury, a refusal motivated in part by fear for personal safety. To be sure, this refusal was a violation of a direct order of the court, but we are satisfied that a sentence substantially less severe is adequate to vindicate the authority of the court.

The penalty for civil contempt under 28 U.S.C. § 1826(a), which covers the exact conduct at issue here, is limited to a maximum of 18 months. Had Leyva testified and given false testimony, imprisonment would have been limited to a maximum of 5 years upon his conviction for perjury or making false material declarations. See 18 U.S.C. §§ 1621 and 1623 (1970). Moreover, even if Leyva had engaged in the overt obstruction of a criminal investigation into narcotics violations, imprisonment upon conviction would have been limited to 5 years. See 18 U.S.C. § 1510 (1970). Additionally, we would note that over half of the States have limited imprisonment upon conviction for criminal contempt to one year or less. Bloom v. Illinois, 391 U.S. 194, 206–07 n.8, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

We conclude that the 35-year sentence imposed in this case was an abuse of discretion and warrants relief. Leyva's refusal to testify was motivated at least in part by fears of reprisal.[7] In addition, the grand jury returned an indictment against the subject of the investigation for which Leyva's testimony was desired. Fear of bodily harm cannot excuse the refusal to testify before a grand jury. See Piemonte v. United States, 367 U.S. 556, 559 n.2, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961). However, it is a circumstance to be considered in mitigation of punishment.

> What appears to be a brazen refusal to cooperate with the grand jury may indeed be a case of frightened silence. Refusal to answer may be due to fear—fear of reprisals on the witness or his family. . * * * We can imagine situations where the questions are so inconsequential to the grand jury but the fear of reprisal so great that nominal punishment, if any, is indicated.

Harris v. United States, 382 U.S. 162, 166–67, 86 S.Ct. 352, 355, 15 L.Ed.2d 240 (1965).

We therefore resentence Leyva to a term of 2 years to be served consecutive to the state sentence under which he is presently confined. The judgment of conviction, with the sentence as herein modified, is affirmed.

---

7. Leyva stated at the February 19, 1974, proceeding before Judge Spears:

> Your Honor, I am looking at the future. If I do make it out, I don't want to have no enemies, no contact with my past associates. I'd like to turn a new leaf, but by me testifying would only create a conflict.

Mr. Klein, his attorney, at that time stated:

> In all honesty, your Honor, my client is in fear of his life. He is afraid for himself or his family, for his friends, should he testify to this grand jury.