**Robert L. DOWELL, etc., et al.,
Plaintiffs-Appellees,**

v.

**The BOARD OF EDUCATION OF THE OKLAHOMA CITY PUBLIC SCHOOLS, etc., et al., Defendants-Appellants.**

United States Court of Appeals,
Tenth Circuit.

Aug. 4, 1972.

Certiorari Denied Dec. 4, 1972.
See 93 S.Ct. 526.

J. Harry Johnson, Oklahoma City, Okl., for defendants-appellants.

John W. Walker, of Walker, Kaplan & Mays, P. A., Little Rock, Ark. (Archibald B. Hill, Oklahoma City, Okl., and Jack Greenberg, James M. Nabrit III, and R. Sylvia Drew, New York City, with him on the brief), for plaintiffs-appellees.

Before LEWIS, Chief Judge, BREITENSTEIN and SETH, Circuit Judges.

PER CURIAM.

Approximately ten years ago, proceedings were commenced to desegregate the public schools in Oklahoma City. The schools were then found to be operated as a dual school system remaining after the abolition of the Oklahoma law requiring such a system. The cases which have been decided during the intervening years include Dowell v. School Board of Oklahoma City Public Schools, D.C., 219 F.Supp. 427; Dowell v. School Board etc., D.C., 244 F.Supp. 971; Dowell v. Board of Education etc., D.C., 307 F.Supp. 583; Board of Education of Oklahoma City Public Schools etc. v. Dowell, 10 Cir., 375 F.2d 158; Dowell v. Board of Education etc., 10 Cir., 430 F. 2d 865; Dowell v. Board of Education, No. 71–1456, Tenth Circuit, August 30, 1971 (unpublished order).

In the last proceedings concerning the Oklahoma City public schools in this court, we ordered that the trial court hold hearings to determine the effectiveness of the plans which had theretofore been approved for the junior and senior high schools, and also to consider the effectiveness of a plan for the elementary schools. The trial court was directed to make whatever modifications that appeared necessary or to adopt additional plans to accomplish the desegregation of the Oklahoma City public schools.

The trial court held extensive hearings on the indicated subjects and found that the Cluster Plan which had theretofore been approved by the trial court and by this court was totally ineffective as it had been administered by the school board, 338 F.Supp. 1256. The trial court adopted a new plan for the desegregation of the junior and senior high schools and elementary schools, and ordered it put into effect. The school board has taken this appeal from the trial court's order.

The positions taken by the parties in the trial court were briefly as follows: The school board asserted that the Cluster Plan, as it was being administered, was effective and also sufficient to meet the constitutional requirements. The board refused to come forth with any substantially different plans or with any substantial modifications of the Cluster Plan. In short, the school board stood

on the plan that was then in effect as to the junior and senior high schools, and a plan for the elementary schools which provided for some part-time interchange of students. The school board also recommended a consultant to study the desegregation problem in the Oklahoma City schools and to make a report for the consideration of the court. This expert was appointed by the court, together with an additional consultant also recommended by the school board. These experts presented their report. This report was opposed by the school board. The plan was considered by the court together with other suggestions.

The plaintiffs presented to the trial court a detailed plan for desegregation which had been prepared by a consultant engaged by them, Dr. John A. Finger. This plan was ultimately approved by the court and incorporated in its order for desegregation. The plan became known as the Finger Plan.

The court in its memorandum carefully considered and evaluated the effectiveness of the Cluster Plan theretofore in effect and indicated that in its opinion the school board had made unauthorized changes in the plan and had administered it in a way which rendered it ineffective and had changed it to be a freedom of choice plan. The court found in regard to the senior high schools: "It does not work and will not work to desegregate the schools." As to the junior high schools the court said of the plan: "The School Board has no other plan to integrate the junior high schools and it is clear that the present plan will not change the racial identity of a single school." As to the elementary schools, the plan before the court was one put into operation by the school board and which had not theretofore been considered by the court. Of this plan the court said:

"It cannot even be described as a good-faith gesture toward constitutional requirements. The 'experiences' no doubt are enjoyed by the children and may perhaps be worthwhile, but the dual system of the School District remains unaffected. The constitutional mandate is not for integrated 'experiences,' but for a desegregated school system."

The trial court in its consideration of the Consultants' Plan found that it had been rejected vigorously by the school board, and said: "The Consultants Plan now stands without a sponsor denounced by friend and foe alike." The court then continued and accepted the school board's objections to the difficulties in administering the plan and found it to be "neither feasible nor workable."

The court then considered the plan proposed by the plaintiffs' consultant, Dr. Finger, considered the objections of the board, and found the plan to be a workable one. In referring to all the proposals, the court said:

"From the foregoing observations and findings, it is manifest that we now have a plan that does not work, a plan that will not work, and a plan that will work. In this situation the court has no real choice. It must select the plan that promises realistically to work now."

It would not appear useful for the purposes of this opinion to consider the details of the plan adopted by the trial court. It provides for rearrangement of the grades which are considered to be junior high school grades, and an extensive rearrangement of the grades assigned to particular schools. There is in addition a substantial alteration of the attendance zones and the selection of schools feeding particular junior high schools and high schools.

The trial court found that a dual school system was now being maintained by the school board and that the board has totally failed to come forward with an acceptable plan of its own. The court pointed out that the attempt to solve the problem by a freedom of choice plan could not be effective to convert the dual system into a unitary system. The court pointed out the prior state-imposed segregation in Oklahoma and the presumptions which must arise there-

from in view of the ineffectiveness of any of the desegregation plans heretofore operated by the school board. The court further said:

"This litigation has been frustratingly interminable, not because of insuperable difficulties of implementation of the commands of the Supreme Court of the United States and the Constitution of the United States, but because of the unpardonable recalcitrance of the Defendant Board and the Superintendent of Schools to come forward with a constitutional plan for the desegregation of the schools of this District."

The trial court considered in detail the decision in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554, which was decided during the course of the litigation, together with the other pertinent opinions which need not be here described. The trial court pointed out that it had considered the teaching of the Swann case in relation to "balancing" of the school attendance between black and white students, and the mandate of the Supreme Court to accomplish the complete dismantling of the dual school systems.

■ The findings of the trial court are amply supported by the record; the plan approved by the trial court and as thereafter modified on remand from this court is well within the jurisdiction and power to accomplish the desegregation of the Oklahoma City schools. The trial court found that there has been no substantial desegregation of the Oklahoma City schools, and the schools must thus be taken as they so exist on this appeal, in the face of the failure of the prior plan to produce the expected results.

■ The plan now approved by the trial court is a direct attack on what is still fundamentally a dual system to desegregate it as rapidly as possible. It was necessary for the trial court to adopt a comprehensive plan such as the one advanced by Dr. Finger in view of the fact that the school board did not come forward with an effective plan. Under these circumstances, it was apparent that the court must turn to outside consultants.

As indicated above, the trial court has considered the Swann decision, and what we consider the prohibitions therein contained against devices to balance the school population at particular schools between black and white students, and thereby to go beyond desegregation. We find no attempt by the trial court to so balance the attendance. The black to white ratio in the entire system was in evidence and was considered by all concerned, but the plan approved does not attempt to achieve anything beyond desegregation.

We do not have before us an issue concerning resegregation as in United States v. Board of Education, Independent School District No. 1, Tulsa County, Okla., 429 F.2d 1253 (10th Cir.).

■ The appellants urge as a separate point that the trial court lost jurisdiction by the entry of an order seeking to terminate the proceedings. However, there was no loss of jurisdiction in view of the motions which the parties thereafter filed for reconsideration. The jurisdiction was a continuing one, and following the directions of this court to hold hearings, the parties acquiesced therein and the proceedings continued as theretofore.

■ The school board also objects to the appointment of a bi-racial committee by the trial court to serve in an advisory capacity. There is no legal basis for an objection to the existence of such a committee for the assistance of the court in an advisory capacity on matters pertaining to the approved plan. It is apparent that such a committee can have no function other than to so advise the court. As such, it is of course proper, if the trial court sees fit, for the committee to consult with the school board and with other public or private organizations that may be concerned. The committee has no authority to do more than to consult with such agencies as it has

no authority to direct in any way their actions. As so limited in its function and authority, the appointment of a bi-racial committee is approved. The composition of such a limited committee is within the discretion of the trial court, and the services of community leaders may be sought by the court from time to time, wholly outside the recommendations that may have been made by the parties in this action.

Affirmed. The mandate shall issue forthwith.