Anthony T. LEE et al.,
Plaintiffs-Appellants,

v.

MACON COUNTY BOARD OF EDUCATION et al., Defendants,

Baldwin County Board of Education,
Defendant-Appellee.

No. 78–1772.

United States Court of Appeals,
Fifth Circuit.

Nov. 15, 1978.

---

J. U. Blacksher, Mobile, Ala., Bill Lann Lee, New York City, for plaintiffs-appellants.

Norborne C. Stone, Bay Minette, Ala., for Baldwin County Bd. of Ed.

William A. Kimbrough, Jr., U. S. Atty., Mobile, Ala., Marie E. Klimesz, Atty., Appellate Section, Civ. Rights Div., Drew S. Days, Asst. Atty. Gen., Walter W. Barnett, Deputy Chief, Dept. of Justice, Washington, D. C., for the U. S.

Before COLEMAN, TJOFLAT and FAY, Circuit Judges.

COLEMAN, Circuit Judge.

Baldwin County, Alabama, a large, predominantly rural county, is bordered, in the main, by Mobile Bay to the west and the State of Florida to the east. The northern part of the county is sparsely populated and is composed of farms and timberlands. Some resort and seafoods industries are located in the southern portion of the county, along Mobile Bay and the Gulf of Mexico. The resort area around Gulf Shores has recently experienced significant population increases, but the largest town in the county is the county seat, Bay Minette, which had a 1970 population of 6727.

Since March 20, 1970, the Baldwin County Board of Education (the Board) has operated under the terminal school desegregation plan approved by the District Court. Pursuant to that plan, the Board closed the historically black and historically white elementary schools[1] in Stockton, which is lo-

1. The Vaughn School, which was historically black, is the subject of much of the dispute now before us. There are two buildings, the older of which was constructed in 1948. Although both buildings are in fair to good condition, eight years of non-use has caused some deterioration, which the lower court found would require approximately $100,000 to repair. Although appellants assert that the Vaughn School has 14 classrooms, the Board states that 12 classrooms are available for use, that two of those twelve must be utilized for

cated some 13 miles northwest of Bay Minette. The plan divided the county into attendance zones, and Stockton was included in the Bay Minette Attendance Center of Attendance Zone Two.[2] All students of elementary age in that attendance center now attend school at Bay Minette Elementary School, which is located on the same large campus as Bay Minette High School. During the 1976–77 school year, 1273 elementary students attended classes in buildings with a nominal capacity of 850. The elementary school thus operated with a student population nearly 50 percent in excess of the designed capacity.

On February 10, 1977, the District Court entered an order finding that the Baldwin County school system was desegregated and unitary in nature.

In order to help alleviate the undesirable overcrowding at Bay Minette the Board petitioned the District Court to reopen the unused Vaughn School in Stockton.[3] In support of its petition, the Board cited the following benefits which would flow from

reopening the Vaughn School: (1) relief from the crowded conditions at Bay Minette, (2) improved home environment education for handicapped children, (3) substantial reductions in travel time for many children, and (4) material reductions in transportation costs. Of the estimated 271 students in the attendance zone proposed by the Board, 181 would be black (67%) and 90 would be white (33%). In the Bay Minette school in the 1976–77 school year, 1111 students were black (30.3%) and 2558 were white (69.7%). In that same year, there were 14,721 students in the entire Baldwin County school system, of which 3385 were black (23.0%) and 11,336 were white (77.0%). It can readily be seen that housing patterns in the Stockton area do not closely reflect county-wide demographics.

The Department of Justice then intervened pursuant to Title IV of the Civil Rights Act of 1964, 42 U.S.C. 2000c et seq., and objected to the reopening of the Vaughn School with the proposed attendance zone lines. The named plaintiffs

special education, and that at least one other classroom must be used for Title I reading instruction. Thus, according to the Board, only nine classrooms are available for regular classroom instruction.

A fire has since destroyed the historically white Stockton School, and the Board received nearly $120,000 in insurance proceeds.

2. Other elementary school students in Attendance Zone Two attend school at Bellefountain Elementary School, Stapleton Elementary School, White House Forks Elementary School, and Cross Roads Elementary School.

3. Section V of the desegregation plan provided:

All school construction, school consolidations, and site selection (including the location of any temporary classrooms) in this system shall be done in a manner which will prevent the recurrence of the dual school structure once this desegregation plan is implemented.

See Singleton v. Jackson Municipal Separate School District, 5 Cir. 1970, 419 F.2d 1211, 1218 (en banc).

The Board also petitioned the Court to reopen a three-room facility in Magnolia Springs to be used for three classes of handicapped or special education students. Neither the named plaintiffs nor the United States objected to the reopening of the Magnolia Springs facility, and the District Court approved the request, contingent upon a showing that such reopening was

not financially incompatible with the construction work needed in the northern part of the county.

Finally, the Board requested permission to construct a new elementary school at Gulf Shores, a resort community which has grown rapidly in recent years. The Board had been the recipient of a gift of a 28-acre plot of land in that community and would not be saddled with land acquisition costs. Although all the 204 students in the proposed Attendance Zone would be white, the District Judge found that the construction of a new school at Gulf Shores would have no adverse effect on the desegregation of the county school system. The plaintiffs and the United States registered no objection to such construction provided that a showing could be made that the construction would not adversely affect other facilities in need of upgrading. The District Judge therefore conditioned his approval of the Gulf Shores construction on a showing that such construction would not be financially incompatible with the construction work in the northern part of the county and the reopening of the Magnolia Springs facility.

No appeal has been taken from either of these portions of the judgment entered below, and we therefore do not review the merits of any questions concerning the proposed Gulf Shores school or the Magnolia Springs facility.

urged the court to reopen that school, provided that the attendance zone be expanded so as to insure an integrated facility. At the subsequent hearing on the petition, the judge requested the school board to report how many black and white students would be assigned to the school if the zone were enlarged to the limits suggested by the plaintiffs and the Justice Department. Soon thereafter, the Board duly reported to the court that the change would add 98 students to Vaughn, all of whom would be white. With these 98 white students added to the original 271, the racial composition would then be 181 black (49.1%) and 188 white (50.9%).

Armed with this information, the court held an off-the-record conference with counsel for the parties. Apparently, the Board resisted the proposed expansion of the Vaughn attendance zone, and the court then suggested that one way to resolve the disagreement would be to expand the Bay Minette facilities. Ten days later, the District Judge issued written findings of fact and a judgment which gave the Board the option either to reopen Vaughn with the extended attendance zone or to keep Vaughn closed and add to the facilities at Bay Minette Elementary. When the Board chose to expand Bay Minette Elementary, plaintiffs appealed.[4] Significantly, the United States, as plaintiff-intervenor, did not join in the appeal.

■ In view of the District Judge's order of February 10, 1977, that the Baldwin County school system was "desegregated and . . . unitary in nature", we must initially consider whether the court below had subject matter jurisdiction over the Board's petition. Federal district courts possess jurisdiction over school desegregation cases only because of unconstitutional action by the state or by a local school board. The magnitude of the constitutional violation, the scope of the remedy required to redress the violation, and the possibility of recurring violations have all made it

necessary for the district courts to retain jurisdiction over many such cases in order to insure the proper implementation of the desegregation plan and the achievement of the ultimate goal—a unitary school system in which the State does not discriminate between public school children on the basis of their race. But once that goal has been attained, the district courts may then follow the orderly procedures previously outlined by this Court and enter an order that the school system is indeed unitary. See e. g., United States v. State of Texas (San Felipe Del Rio Consolidated Independent School District), 5 Cir. 1975, 509 F.2d 192; Youngblood v. Board of Public Instruction of Bay County, 5 Cir. 1971, 448 F.2d 770, 771; Steele v. Board of Public Instruction of Leon County, Florida, 5 Cir. 1971, 448 F.2d 767. Normally a court could then close the docket on the case, and "in the absence of a showing that either the school authorities or some other agency of the State has deliberately attempted to fix or alter demographic patterns to affect the racial composition of the schools, further intervention by a district court should not be necessary." Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 32, 91 S.Ct. 1267, 1284, 28 L.Ed.2d 554 (1971). See also Pasadena City Board of Education v. Spangler, 427 U.S. 424, 436–37, 96 S.Ct. 2697, 2705, 49 L.Ed.2d 599 (1976); United States v. South Park Independent School District, 5 Cir. 1978, 566 F.2d 1221, petition for cert. filed, 46 U.S.L.W. 3666 (U.S. Apr. 25, 1978) (Nos. 77–1464 and 77–1467). Once the case is closed, the officials of the public school system have the responsibility for educational decisions. They are bound to take no actions which would reinstitute a dual school system or which would discriminate against any child on the basis of race. See Swann, supra, 402 U.S. at 21, 91 S.Ct. at 1279. See generally L. Tribe, American Constitutional Law 13–14, 27–28 (1978).

■ In this case, the District Court entered its order on February 10, 1977, finding the Baldwin County school system to be unitary in nature. Since no timely objec-

---

4. Plaintiffs moved the District Court for a stay pending appeal, but the Court denied the motion. Plaintiffs then moved this Court for a stay pending appeal and for expedited appeal. We granted only the motion for an expedited appeal.

tions were filed, all objections to that order were waived, in the absence of a showing that an error resulted in a fundamental miscarriage of justice. *Lee v. Dallas County Board of Education*, 5 Cir. 1978, 578 F.2d 1177. That order also required the Board to file statistical reports on an established schedule, a requirement with which the Board has apparently complied. The court did not, however, enter final judgment or dismiss the case, so we assume that it retained jurisdiction for purposes other than receiving the reports. Under this assumption, the District Court appears to have had subject matter jurisdiction over the case.

The parties apparently do not agree on the issue presented in this case. At least, they characterize it in different terms. Plaintiffs seem to argue solely that "[t]he district court abused its discretion when it approved the School Board's off-the-record about-face." Appellants' Brief at 11. The Board agrees that the issue is whether the court abused its discretion, but denies that such abuse has occurred. Appellees' Brief at 7. The plaintiffs then respond that indeed a constitutional violation is at issue, namely the "affirmative duty . . . to seek means to eradicate the vestiges of the dual system." Appellants' Reply Brief at 4 & n. 4 (citing *United States v. Board of Public Instruction of Polk County, Fla.,* 5 Cir. 1968, 395 F.2d 66, 69). Both sides mar-

shall extensive facts and figures to demonstrate that the Board should have taken one action or the other.[5] In essence, the dispute boils down to questions of resource allocation and educational policy. If it is true that expenses will indeed be higher to add to Bay Minette than to Vaughn, that is a matter of local policy and not one of constitutional dimensions. Funding decisions are within the competence of the Board, whose powers, as the Supreme Court has noted, are "plenary," in the absence of a constitutional violation. *Swann, supra,* 402 U.S. at 16, 91 S.Ct. at 1276.

We fail to understand how this record displays a constitutional violation. Baldwin County has operated under a desegregation plan since 1970, and the implementation of that plan has evidently been remarkably smooth and characterized by compliance. School children have been bussed to Bay Minette for eight years, and no appeal has ever been taken to this Court alleging that such bussing was unconstitutional solely because it imposed a disparate burden on the black children in the sparsely populated northwest sector of the county. The District Court has entered an order finding that the school system is unitary, and no timely objections were filed to that order. The attorney for the United States stated for the record that the government was satisfied with the Court's judgment on

---

5. Plaintiffs argue that the record contains absolutely no evidence regarding the educational and financial feasibility of expanding the Bay Minette facility. They point to statements in the record that Bay Minette Elementary is overcrowded and that it is educationally undesirable to operate such a large elementary school, even if the crowding is relieved through the addition of more classrooms. They argue that construction costs will be over $100,000 greater at Bay Minette than at Vaughn and that transportation costs will be greatly reduced if Vaughn were reopened. Finally, in an effort to make out a showing of discriminatory intent, they repeatedly allege that the Board made its decision *solely* on the grounds that 98 white students would have to be bussed to Vaughn.

In response, the Board argues in brief that its decision to enlarge Bay Minette Elementary does not impose on any student a burden which did not already exist. In addition, the Board objects to the proposal to reopen the Vaughn School because it would:

(1) take 22 students out of an uncrowded facility (Perdido School) and bus them a longer distance to a facility (Vaughn School) which would be overcrowded, (2) take 48 students from Bay Minette Elementary and bus them an extra 8 to 17 miles a day, (3) require construction of additional facilities at Vaughn to preserve accreditation, (4) take 98 additional students out of Bay Minette Elementary and not significantly improve the condition after having taken 236 students from that school (it would reduce pupil-teacher ratio in Bay Minette but not classroom facility condition), (5) take some students who live 2 miles from Bay Minette Elementary and bus them 11 miles to Vaughn, (6) require the purchase of two and possibly three new buses, (7) create a situation where buses would be travelling "against the grain", and (8) require children from the same households to go to school in different directions.

Appellees' Brief at 11–12.

the Board's petition. R. 67–68. As evidence of that satisfaction, the United States has not appealed.

When there have evidently been no changed circumstances between the situation as it existed on February 10, 1977, when the Court entered its order finding the school system to be desegregated and unitary, and the situation as it exists today, there is simply no constitutional violation when the school board decides to expend funds to relieve crowded conditions at a school which became crowded pursuant to a judicially-approved desegregation plan. It is too late now to appeal the merits of that plan. The failure of the Board to inaugurate a neighborhood school under conditions insisted upon by a small segment of the electorate is not a violation of the Constitution. See *Davis v. Board of School Commissioners of Mobile County,* 5 Cir. 1973, 483 F.2d 1017, 1021.

Since there has been no constitutional violation, we cannot say that the District Judge abused his discretion in offering the Board a reasonable choice between two equally lawful options.

AFFIRMED.