UNITED STATES of America, Plaintiff,
Shueanda Bryant, et al.,
Plaintiff-Intervenors,

v.

LAWRENCE COUNTY SCHOOL
DISTRICT et al., Defendant.

Civ. A. No. H2216(L).

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Nov. 27, 1984.

Suzanne Griggins, Mendenhall, Miss., for plaintiff.

Kenneth A. Rutherford, Susan L. Runnels, Thomas Price, Alston, Jones & Davis, Jackson, Miss., for defendant.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, District Judge.

In 1967, the United States brought suit against Lawrence County School District to enjoin discrimination on the basis of race in the public school system. The United States Court of Appeals for the Fifth Circuit entered orders in November of 1969 requiring desegregation of the county schools. In implementing the orders, the school district established three attendance zones. At present, students in grades 1–12 living in the northeast section of Lawrence County attend New Hebron School. Students in grades 1–12 who reside in the southwest section of the county attend Topeka Tilton School. All other students live in Zone 2 and attend Monticello High School and McCullough Junior High School in grades 5–12. Those elementary students in the eastern portion of that zone attend Beulah Williams School and those in the western section attend Monticello Elementary.

In May 1984, the electorate of Lawrence County approved a school bond issue of approximately $4,000,000.00 for construction and renovation of county schools. The case is before the court now on the request of the plaintiff-intervenors to enjoin the proposed construction and renovation pending a trial on the merits of their claims of discrimination.

█ The defendants argue that the motion should be dismissed because this court is prohibited from reaching the merits of the plaintiff-intervenors' claims. First, the defendants assert that the plaintiff-intervenors lack standing to bring their claims before the court. The United States Supreme Court's decision in *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed.2d 873 (1954), and its progeny have clearly established the right of a child to attend a desegregated school. *See, e.g., Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 11–12, 91 S.Ct. 1267, 1273–1274, 28 L.Ed.2d 554 (1971). An allegation of denial of this right, therefore, is a charge of sufficient injury to

meet the constitutional standing requirements. In *Allen v. Wright,* —— U.S. ——, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), the plaintiffs charged that their right to receive an education in a racially integrated school was diminished by the failure of the Internal Revenue Service to adopt standards that were sufficient to deny tax exempt status to racially discriminatory schools. *Id.* at ——, 104 S.Ct. at 3319. Acknowledging that the plaintiffs' claimed injury was "one of the most serious injuries recognized in our legal system," the Court nonetheless dismissed the case for lack of standing because "the injury alleged is not fairly traceable to the Government conduct [plaintiffs] challenge as unlawful." *Id.* at ——, 104 S.Ct. at 3328. Such is not the case here. Furthermore, the relief sought, if granted, could restore the denied right to the plaintiff-intervenors. Therefore, the court concludes that the plaintiff-intervenors have standing for the merits of their claims to be considered.

The defendants also charge that the plaintiff-intervenors' claims are barred by res judicata. After the special election in May 1984, the defendants initiated the statutory procedure for validation of the bond issue. The appropriate material was submitted to the chancellor and, when no objections were raised, an order validating the bond issue was entered. The plaintiff-intervenors' claims, according to the defendants, could only be raised in the validation proceeding, and failure to object at that time forever bars their action.

█ If the plaintiff-intervenors were objecting to the validity of the bond issue, the defendants' argument perhaps would have merit. Plaintiff-intervenors, however, do not challenge the bond issue's validity; rather, they contend that the proposed expenditure of the bond funds is in violation of their constitutional rights and of the 1969 Fifth Circuit Orders. Therefore, the chancery court proceeding was not the appropriate forum for raising these claims, and, in fact, under Mississippi law, the chancellor was without authority to consider them. *See Kerley v. City of Hattiesburg,* 361 So.2d 44, 54 (Miss.1978). Consequently, this court is of the opinion that the

plaintiff-intervenors' claims are not barred by res judicata because the issues were not and could not have been resolved in the state court action.

Having resolved the defendants' arguments in favor of the plaintiff-intervenors, the court can now proceed to the merits of their motion.

■ The criteria for the issuance of a preliminary injunction are well-settled in the Fifth Circuit. The moving party must demonstrate:

1. A substantial likelihood that the movant will prevail on the merits;

2. A substantial threat that the movant will suffer irreparable injury if the injunction is not granted;

3. That the threatened injury to the movant outweighs the threatened harm the injunction may do to the nonmoving party; and

4. That granting the preliminary injunction will not disserve the public interest. *Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974).

■ A school board has an affirmative duty "to take no actions which would reinstitute a dual school system or which would discriminate against any child on the basis of race." *Lee v. Macon County Board of Education,* 584 F.2d 78, 81 (5th Cir.1978). In *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 21, 91 S.Ct. 1267, 1278–79, 28 L.Ed.2d 554 (1971), the United States Supreme Court recognized that the location and condition of school facilities are important factors in the desegregation of a school system. The Court stated: "It is the responsibility of local authorities and the district court to see to it that further school construction and abandonment is not used and does not serve to perpetuate or re-establish the dual system." 402 U.S. at 21, 91 S.Ct. at 1279. The 1969 Fifth Circuit Order relating to Lawrence County included a section which provided: "All school construction, school consolidation and site selection (including the location of any temporary classrooms) in this system shall be done in a manner which will prevent the recurrence of the dual school structure once this design plan is implemented."

■ Therefore, it is clear that the defendants had a duty, pursuant to case law and the Fifth Circuit Order, to avoid construction and renovation of school facilities that would tend to re-establish a dual system. To satisfy the first prong of the *Canal Authority* test, the plaintiff-intervenors must demonstrate a substantial likelihood of prevailing on the merits of their claim that the defendants breached that duty.[1]

In a recent decision, the Fifth Circuit Court of Appeals upheld the site selection decision of the Lincoln Parish School Board. *Copeland v. Lincoln Parish School Board,* 598 F.2d 977 (5th Cir.1979). The court approved the factors considered by the Board based on earlier decisions in the Circuit. In making their decision, the Board had

> studied each location with an eye to (1) centrality, (2) maintenance of racial balance, (3) racially balanced decrease in overall student transportation mileage, (4) ease of access and availability of transportation arteries, (5) accessibility of utilities, and (6) size and shape compatible with planned construction, future expansion, and community growth.

*Id.* at 981.
The court found these criteria to be "similar to, in fact more detailed than, those approved by this court in *Davis v. Board of Commissioners of Mobile County,* 5 Cir. 1973, 483 F.2d 1017." In examining these factors, the court found that the Board had "fulfilled its judicially imposed obligation 'to examine its construction plans with a view to furthering desegregation.'" *Id.* at 981 (quoting *Lee v. Autauga County Board of Education,* 514 F.2d 646, 648 (5th Cir.1975)).

At the hearing on this motion, testimony and affidavits showed that, in planning the

---

1. The original plaintiff in the action, the United States, has not joined in the motion and offered no testimony or evidence at the hearing but stated through counsel that it had seen no indication of a violation of the constitution or the Fifth Circuit Order by the defendants.

bond issue proposal, the defendants considered the impact the construction and renovation would have on desegregation. Denson Deavers, Lawrence County Superintendent of Education, stated that the Board considered the effect on desegregation as well as compliance with the Fifth Circuit Orders.[2] In addition, the Board received comments from members of the community, including the local chapter of the NAACP. NAACP members recommended, as the plaintiff-intervenors do here, that the county schools be consolidated to some extent. Although the plans presented by the NAACP were faulty in some respects, the Board discussed the feasibility of consolidation with their architect and received cost estimates for several consolidation plans.

The plans for consolidation considered by the Board were rejected for various reasons. The cost of several of the proposals exceeded the amount available to the school system. In addition, consolidation would greatly increase transportation costs. The consolidation plans proposed by the NAACP did not take into account necessary space requirements. The Board considered a plan for limited consolidation that would provide for two schools, one on either side of the Pearl River, which traverses the county. The racial composition of the schools, however, would be substantially disproportionate because of the population distribution of the county. The Board also considered the ways in which consolidation would affect the school children and the quality of education provided by the system. Consolidation would substantially increase commuting time for many children, black and white. The Board also concluded that the community schools provided much better opportunity for the development of leadership and social skills of all children. This court recog-

nizes that, while the advantages of community schools are substantial, they cannot be placed above the important right of children to attend a desegregated school. *See Valley v. Rapides Parish School Board,* 646 F.2d 925, 940 (5th Cir.1981). The plan adopted by the Board was, in their judgment, the most cost efficient means of providing quality education to all children of the county.

The Board was also influenced by recent state legislation which requires the implementation of kindergartens by 1986 and correction of overcrowding problems. Failure to comply with the legislation will result in the Lawrence County school system's losing its accreditation, which will adversely affect all students in the county. Furthermore, the evidence showed that the schools planned to be renovated or replaced were unsafe and overcrowded. The New Hebron School, the classroom building of which is to be replaced, was built in 1928, and the building is potentially hazardous due to structural problems and dangerous fire escape procedures. The Monticello Elementary school, which is to be replaced, likewise has structural problems and unsafe fire escapes. In addition, the elementary school is located at a busy intersection that jeopardizes the safety of the children in playing, walking between buildings and boarding school buses. Proposals for the other schools are limited to minor renovations to increase cost efficiency and add needed classroom space, but these schools do not present the safety hazards presently evident in the New Hebron and Monticello Elementary schools.

The plaintiff-intervenors presented little probative evidence on the issue before the court, which is whether the Board satisfied their affirmative duty to prevent the re-establishment of a dual school system. It was shown that the Board did not conduct

---

**2.** The plaintiff-intervenors assert, and this court agrees, that strict adherence by a school board to a court imposed desegregation plan will not always satisfy the Board's affirmative duty. *See Taylor v. Ouachita Parish School Board,* 648 F.2d 959, 968 n. 10 (5th Cir.1981). The plaintiff-intervenors, however, have not requested that this court alter the Fifth Circuit's Order and

have not presented sufficient evidence to justify this court's ordering a revision of the present attendance zones on its own motion. In fact, the plaintiff-intervenors' complaint presently before the court seeks strict compliance by the Board with the school zone attendance assignments.

extensive professional studies of all of the possible effects resulting from the various plans considered, but the court cannot infer from the absence of such studies that the Board failed to meet their responsibility. The Board did consider a study by the University of Southern Mississippi regarding the present and future needs of the system.

The plaintiff-intervenors also did not present any documentation that blacks would suffer an adverse impact under the plan, such as evidence that the travel time of blacks would be greater than that of whites or that the Board had limited the construction and renovation plans primarily to schools that were predominantly white. Instead, the evidence demonstrated that the transportation burden would be borne by all students and that the bond money was to be used for the schools with the greatest needs, without reference to racial composition. One aspect of the plan is the establishment of an advanced study program at Monticello High School, and the court notes that students at the schools that have larger percentages of white students will bear the burden of additional commuting time in order to take advantage of these special classes.

The plaintiff-intervenors challenged the Board's site selection, but the court finds that the proposed construction is not in areas that are racially identifiable to the extent that members of one race are adversely impacted by the choice. Physical characteristics of Lawrence County place limitations on the Board's possible choices of locations, for the Pearl River crosses the central part of the county and is spanned by only two bridges. Therefore, certain sites are not feasible locations for schools because of the tremendous increase in the time and cost of transporting students. Of course, the Board is also restricted by the price and availability of land. While the plaintiff-intervenors identified certain areas in which the Monticello Elementary School could be located, there was no evidence that the subject land was actually available or appropriate.

The new classroom building for New Hebron is to be placed on that school's present campus. To locate it elsewhere would necessitate either constructing all new facilities for the school or a tremendous increase in cost and time for transporting students between the two segments of the campus. The Monticello Elementary School is to be replaced but a site has not yet been selected. The present location of the school is not a feasible choice for the new building because of lack of needed space. The Board is, however, considering construction of a new facility near the Monticello High School Building. This location would enable the school system to decrease transportation cost and time. The bond proposal also includes the construction of a vocational technical school in Lawrence County. The proposed location of this school adjacent to Monticello High School in the central part of the county is apparently not disputed by plaintiff-intervenors. The rest of the Board's plan deals with the renovation and expansion of present facilities, and, consequently, location of construction is not an issue in those situations.

One of the plaintiff-intervenors' primary contentions is that the Board should postpone their final decision pending announcement by the state of consolidation plans for the county. The Board's decision to proceed prior to that announcement may or may not be unwise, but it is not a constitutional violation and, therefore, is not one to be considered by this court. "Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults." *Swann*, 402 U.S. at 16, 91 S.Ct. at 1276.

The plaintiff-intervenors also presented the testimony of a desegregation specialist, who concluded that the school system presently has excess capacity. This witness had not inspected the facilities and apparently did not have access to enrollment figures for each grade. It is the court's opinion that this testimony is not sufficiently reliable from which any conclusions may be drawn regarding whether the Board's decision was racially motivated. In addition, the question of whether the Lawrence County School system needs the additional

capacity is generally one for resolution by the school board and not by this court.

Plaintiff-intervenors contend that they will suffer irreparable harm if their motion for preliminary injunction is not granted in that, if construction is permitted to begin, the defendants will have persuasive economic and administrative arguments in favor of continued construction at a trial on the merits. The preliminary injunction, according to the plaintiff-intervenors, will maintain the status quo and "preserve the court's ability to render a meaningful decision on the merits." *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). The plaintiff-intervenors also argue that the construction will allow segregation to continue in Lawrence County for another generation. Recognizing that deprivation of the right of children to attend a desegregated school, if shown, is a most serious injury, the court cannot find the irreparable injury prong of the *Canal Authority* test to be satisfied, when the plaintiff-intervenors have failed to establish a likelihood of success on the merits. Furthermore, enjoining construction causes great harm to the defendants in the potential loss of accreditation due to insufficient and unsafe school facilities.

It is doubtful that the public interest can ever be disserved by preserving a child's right to attend a desegregated school. In this case, however, where the court cannot find a likelihood that the plaintiff-intervenors will prevail on the merits of their claim that that right has, in fact, been denied, the public interest is best served by allowing the renovation and construction to begin in order that all children of Lawrence County can benefit.

In *Canal Authority v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974), the court stated: "[A] preliminary injunction is an extraordinary remedy, not normally available unless the plaintiff clearly carries his burden of proof as to its prerequisites." In this case, the plaintiff-intervenors have simply not met this burden.

It is, therefore, ordered that the plaintiff-intervenors' Motion for Preliminary Injunction be and is hereby denied.