# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 24, 2014

Lyle W. Cayce
Clerk

No. 12-30850

THERESA D. THOMAS, on behalf of D. M. T., on behalf of E. J. T., on behalf of V. A. T.; ALPHONSE FONTNETTE, on behalf of J. F.; BENJAMIN C. ROY, on behalf of M. H., on behalf of K. H.,

Plaintiffs–Appellees,

v.

SCHOOL BOARD ST. MARTIN PARISH,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before OWEN and HAYNES, Circuit Judges, and LEMELLE,[*] District Judge.

PRISCILLA R. OWEN, Circuit Judge:

St. Martin Parish School Board (the School Board) appeals the district court's denial of its motions to dismiss this desegregation case originally filed in 1965 by Theresa Thomas, on behalf of D.M.T., E.J.T., and V.A.T.; Alphonse Fontnette, on behalf of J.F.; and Benjamin Roy, on behalf of M.H. and  K.H. (collectively, Plaintiffs).  We affirm.

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 12-30850

**I**

This case concerns the district court's decision to revisit a school desegregation case in which the last order prior to 2009 was entered in 1974 (the 1974 Order). In 1965, Plaintiffs filed a complaint under 42 U.S.C. § 1983 alleging that the School Board was operating a segregated school system (a "dual system") and seeking injunctive relief. In September 1965, the presiding judge, Judge Richard Putnam, found that the School Board had engaged in intentional discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and ordered the immediate desegregation of all grades in the School Board's system. At the same time, the court approved the initial plan of desegregation proposed by the School Board.

In July 1969, the School Board proposed a new plan of desegregation. The district court approved the plan at that time and issued an amended judgment regarding the desegregation plan in December 1971. Over the next several years, the district court received regular reports from the School Board reporting the status of its desegregation effort, approved certain changes to the desegregation plan requested by the parties, and made various other rulings.

In July 1974, Judge Putnam issued an order directing the parties to file briefs on several issues, including "[w]hether or not this school system has achieved a unitary status, has maintained such status for a period of two years, and the decree of th[e] Court should be dissolved" as of that time. The decree that followed—the 1974 Order—stated, in pertinent part, as follows:

> II. The objective criteria filed by the Board and set out in the Board's Policy Manual for Hiring and Promoting of faculty and staff members within and for said system may be continued in operation, subject to the conditions imposed upon defendants with regard to the future operations of the public school system . . . , and reserving to all parties the right to raise this issue within the two year period hereinafter stated in paragraph VI.

No. 12-30850

III. It is apparent from the record in this case, including the detailed plan for the operation of the St. Martin Parish public schools, and we so find and accordingly decree that the above named defendants have previously achieved a unitary school system and have operated as such for a period in excess of three (3) years prior to this date; accordingly, all detailed regulatory injunctions heretofore entered by this Court against said defendants are hereby dissolved.

IV.   Said defendants are hereby permanently enjoined from operating a dual public school system in the Parish of St. Martin, and from adopting any regulatory policies, practices or performing any acts in regard to said public school system in any aspect of its operations which are discriminatory as to any members of the student population, faculty or staff, or any of its employees, or which would deny any benefits to any of said persons or classes of persons, or others affected by said action, on grounds of race, religion, color or national origin.

V. To insure compliance with the permanent injunction above set forth, defendants and their successors in office shall: (1) file with this Court on or before November 15, 1975 and November 15, 1976, the statistical data required by the "Hinds County Report," fully detailed in *United States v. Hinds County School Board*, 433 F.2d 618-19, Appendix B (5 Cir. 1970) [sic], with copies to all counsel of record, and (2) they shall henceforth comply with all regulations of the Department of Health, Education and Welfare [and, in short, all applicable laws].

VI. This Court retains jurisdiction of this cause for a period of two years from this date. The matter shall be placed on the inactive docket of this Court, subject to being reopened on proper application by any party made within said period, or on the Court's own motion should it appear that further proceedings are necessary.

This was the last order entered in the case prior to 2009.

In 2009, the chief judge of the District Court for the Western District of Louisiana noted sua sponte that the case remained on the court's inactive docket and assigned the case for further proceedings. In April 2010, the judge to which the case was assigned observed that jurisdiction appeared to have lapsed in 1976 but invited the parties to notify the court if they disagreed with that conclusion.

3

No. 12-30850

Plaintiffs and the United States Department of Justice filed responses, arguing that the 1974 order had not divested the court of jurisdiction as of 1976. Plaintiffs also filed a motion to substitute named plaintiffs. The School Board filed two motions to dismiss, both of which argued that the 1974 Order was a final judgment that dismissed the case.

After a hearing, the district court issued a memorandum order denying both motions.[1] The court reasoned that the characterization of the order was a basic issue of subject matter jurisdiction. It held that "the [1974 Order] is not sufficiently precise to constitute a final judgment finding that the school board has remedied the vestiges of past segregation to the extent practical" and, accordingly, that the "suit remains alive." The court therefore denied the motions to dismiss. This appeal followed.

## II

As an initial matter, we must consider our appellate jurisdiction. The School Board has appealed the district court's denial of its motions to dismiss, which ordinarily does not constitute an immediately appealable order.[2] The School Board contends that appellate jurisdiction lies either under 28 U.S.C. § 1291, which grants appellate jurisdiction over "final decisions" of the district court,[3] or under 28 U.S.C. § 1292(a)(1), which grants appellate jurisdiction over certain interlocutory orders related to injunctions.[4] We conclude that

---

[1] In a separate order, the district court administratively denied the plaintiffs' motion to substitute named plaintiffs pending its resolution of the jurisdiction issue. The docket reflects that the district court has not revisited this order. No substitution of plaintiffs has yet occurred in the case.

[2] *See, e.g.*, *Newball v. Offshore Logistics Int'l*, 803 F.2d 821, 824 (5th Cir. 1986).

[3] 28 U.S.C. § 1291.

[4] *Id.* § 1292(a)(1).

4

No. 12-30850

jurisdiction lies under § 1292(a)(1) and do not consider whether appellate jurisdiction would otherwise lie under § 1291.

Section 1292(a)(1) provides that courts of appeals shall have jurisdiction over,

> [i]nterlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court. . . .[5]

This provision applies to orders that explicitly grant, continue, modify, refuse, or dissolve injunctions or that refuse to dissolve or modify injunctions, as well as to those that have the practical effect of doing so.[6] In the latter circumstance, however, appellate jurisdiction will lie only if the district court's order "might have a 'serious, perhaps irreparable, consequence,' and . . . can be 'effectually challenged' only by immediate appeal."[7]

In this case, we conclude that although the district court's order did not explicitly refuse to dissolve an injunction, it had the practical effect of doing so. In the district court, the School Board contended that the 1974 Order was a final order that dismissed the case. Although the School Board did not express it in

---

[5] *Id.*

[6] *E.g.*, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981); *Hatten-Gonzales v. Hyde*, 579 F.3d 1159, 1167 (10th Cir. 2009); *McCoy v. La. State Bd. of Educ.*, 345 F.2d 720, 721 (5th Cir. 1965) (per curiam) (citing *Ettelson v. Metro. Life Ins. Co.*, 317 U.S. 188 (1942)).

[7] *Carson*, 450 U.S. at 84 (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955)); *accord McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 352 (5th Cir. 2004) ("[A]fter *Gardner*, 'orders which . . . have the *practical effect* of denying an injunction, but do not do so in explicit terms, are immediately appealable if the order threatens serious, perhaps irreparable consequences and can be effectively challenged only by immediate appeal.'" (second alteration in original) (quoting *Sherri A.D. v. Kirby*, 975 F.2d 193, 203 (5th Cir. 1992))); *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 170 (5th Cir. Unit B 1981) (applying *Carson* in a case involving refusal to dissolve an injunction).

so many words, the School Board implicitly argued that the injunction in the 1974 Order was—and, in any event, should be—dissolved. By holding that the 1974 Order was not a final order that dismissed the case, the district court's denial of the motions to dismiss had the practical effect of refusing to dissolve the 1974 Order's permanent injunction.[8] Given the peculiar circumstances of this nearly fifty-year-old case, the district court's refusal also may have serious, perhaps irreparable consequences for the School Board and can be effectually challenged only by immediate appeal. Accordingly, we hold that appellate jurisdiction lies under § 1292(a)(1).

## III

We now turn to the issue of the district court's jurisdiction. As the district court correctly recognized, if the 1974 Order held that the School Board had met its constitutional mandate to eliminate all vestiges of discrimination and dismissed the case, then the district court would be without jurisdiction to consider any new matters in the case.[9] If not, then the case remains live.[10]

Our analysis is governed by the Supreme Court's decision in *Board of Education of Oklahoma City Public Schools v. Dowell*,[11] which dealt with a similar issue to that posed by this case. In *Dowell* the district court entered an order in 1977 titled "Order Terminating Case," which provided as follows:

> The Court has concluded that [the desegregation plan] worked . . . .
> The School Board, under the oversight of the Court, has operated
> the Plan properly, and the Court does not foresee that the

---

[8] *See Roberts*, 653 F.2d at 170 ("[D]efendants contended that all provisions of the decree had expired; in essence, they asked the court to dissolve the injunction. In holding that the decree continues to be viable, the court's order had the practical effect of refusing to dissolve the injunction.").

[9] *See Lee v. Macon Cnty. Bd. of Educ.*, 584 F.2d 78, 81-82 (5th Cir. 1978).

[10] *See id.*

[11] 498 U.S. 237 (1991).

No. 12-30850

termination of its jurisdiction will result in the dismantlement of the Plan or any affirmative action by the defendant to undermine the unitary system so slowly and painfully accomplished over the 16 years during which the cause has been pending before this court . . . .

The School Board, as now constituted, has manifested the desire and intent to follow the law. The court believes that the present members and their successors will now and in the future continue to follow the constitutional desegregation requirements.

Now sensitized to the constitutional implications of its conduct and with a new awareness of its responsibility to citizens of all races, the Board is entitled to pursue in good faith its legitimate policies without the continuing constitutional supervision of this Court . . . .

Jurisdiction in this case is terminated ipso facto subject only to final disposition of any case now pending on appeal.[12]

The Supreme Court first observed that the order did not dissolve the desegregation decree. The Court then explained that, because courts in the 1970s had been inconsistent in their use of the term "unitary," it could not take the order's reference to the board's achievement of a "unitary system" to mean that the school board had met its constitutional obligations. Some courts "used [the term] to identify a school district that has completely remedied all vestiges of past discrimination," which would mean that the district had met the mandate of *Brown v. Board of Education*[13] and its progeny.[14] Other courts, however, used the term "to describe any school district that has currently desegregated student assignments, whether or not that status is solely the result of a court-imposed

---

[12] *Dowell*, 498 U.S. at 241-42.

[13] 349 U.S. 294 (1955).

[14] *Dowell*, 498 U.S. at 245 (citing *Brown*, 349 U.S. 294) (collecting cases).

desegregation plan."[15] Under the latter usage, "a school district could be called unitary and nevertheless still contain vestiges of past discrimination."[16]

In light of this ambiguity, the Court determined that the order was "unclear with respect to what it meant by unitary and the necessary result of that finding."[17] The Court therefore upheld the court of appeals' conclusion that "while the 1977 order . . . did bind the parties as to the unitary character of the district, it did not finally terminate the . . . litigation."[18] In this regard, the Court observed "that a school board is entitled to a rather precise statement of its obligations under a desegregation decree," and "[i]f such a decree is to be terminated or dissolved, [plaintiffs] as well as the school board are entitled to a like statement from the court."[19] Notably, the Court came to this conclusion notwithstanding the 1977 order's seemingly clear intention to terminate the case.

The decision in *Dowell* mandates the conclusion that the unitariness finding in the 1974 Order is ambiguous and, therefore, that the 1974 Order did not dismiss this case. The 1974 Order states that "[i]t is apparent from the record in this case, including the detailed [desegregation] plan for the operation of the St. Martin Parish public schools, and we so find and accordingly decree that the above named defendants have previously achieved a unitary school system and have operated as such for a period in excess of three (3) years prior to this date." As in *Dowell*, the meaning of this declaration is unclear. Although it could mean that the School Board had remedied all vestiges of past

---

[15] *Id.*

[16] *Id.*

[17] *Id.* at 246.

[18] *Id.*

[19] *Id.* (citing *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424 (1976)).

discrimination, it also is susceptible to being read as stating that the school system was presently unitary but had not yet eliminated the vestiges of past discrimination.[20]

The School Board relies on the 1974 Order's statement that the district court would "retain[] jurisdiction of this cause for a period of two years" from the date of the order and place the case on the inactive docket, "subject to being reopened on proper application by any party made within said period, or on the Court's own motion." The School Board contends that this provision had the effect of dismissing the case as of 1976. However, in *Dowell*, the Supreme Court concluded that an order expressly terminating jurisdiction is not by itself effective to dismiss a desegregation case, nor does it transform an ambiguous finding of unitariness into an unambiguous one.[21] The cases cited by the School Board, each of which involved an order explicitly dismissing the case,[22] are not to the contrary.

At oral argument, the School Board sought to distinguish *Dowell* by noting that the order in *Dowell* did not refer explicitly to any injunctions while the 1974 Order expressly dissolved "all detailed regulatory injunctions" entered against the Board. We are not persuaded. Dissolving "all detailed regulatory injunctions" does not qualify as a "rather precise statement" of the School Board's ongoing obligations. The 1974 Order also explicitly and implicitly refers to the continuing existence of an injunction mandating conduct on the part of the

---

[20] *See United States v. State of Ga., Troup Cnty.*, 171 F.3d 1344, 1348-49 (11th Cir. 1999).

[21] *See Dowell*, 498 U.S. at 246.

[22] *See United States v. Overton*, 834 F.2d 1171, 1173-74 (5th Cir. 1987) (consent decree provided for supervision of school district for three years, at which point the district would be declared unitary and the case dismissed; at the end of three years, the district court entered an order dismissing the case); *Riddick ex rel. Riddick v. Sch. Bd. of the City of Norfolk*, 784 F.2d 521, 525 (4th Cir. 1986) (district court received reports for several years and then entered an order dismissing the case).

No. 12-30850

School Board. The 1974 Order imposed a permanent injunction barring the School Board from returning to a segregated system and from adopting any discriminatory policies or practices or performing discriminatory acts with respect to any aspect of its operations. Paragraph two of the 1974 Order, which held that the personnel policy adopted by the School Board could "be continued in operation, subject to the conditions imposed upon defendants with regard to the future operations of the public school system of St. Martin Parish," also suggests that the School Board remained subject to affirmative obligations. The 1974 Order's inclusion of these provisions would have been anomalous if it had found that the School Board had reached unitary status in the sense of eliminating all vestiges of past discrimination.[23]

Although in the absence of *Dowell* we may have been inclined to hold that the 1974 Order was a final order that dismissed the case, *Dowell* requires the conclusion that the 1974 Order is ambiguous. We accordingly affirm the district court's order denying the motion to dismiss for want of jurisdiction and remand for further proceedings.

We are confident that on remand, the district court will hew closely to the other facets of *Dowell*'s holding. The Supreme Court held that decrees in school

---

[23] *See, e.g.*, *Dowell*, 498 U.S. at 248 ("The legal justification for displacement of local authority by an injunctive decree in a school desegregation case is a violation of the Constitution by the local authorities."); *Monteilh v. St. Landry Parish Sch. Bd.*, 848 F.2d 625, 629 (5th Cir. 1988) (observing, in holding that a 1971 declaration of that the district was "unitary in its entirety" was not a final declaration on that subject, that declaration's "retention of jurisdiction would have been anomalous" if the district court actually had declared that the district had reached unitary status); *Lee v. Macon Cnty. Bd. of Educ.*, 584 F.2d 78, 81-82 (5th Cir. 1978) ("[T]he District Court entered its order on February 10, 1977, finding the . . . the school system to be unitary in nature. . . . The court did not, however, enter final judgment or dismiss the case, so we assume that it retained jurisdiction for purposes other than receiving the reports."); *see also Troup Cnty.*, 171 F.3d at 1348 ("[A]lthough vacating the more detailed earlier injunction, the 1973 Order issued a new permanent injunction, imposing certain obligations on Troup County. The fact that the 1973 Order imposed this permanent injunction upon Troup County is wholly inconsistent with an end to federal jurisdiction over and supervision of the school district.").

10

desegregation cases "are not intended to operate in perpetuity,"[24] and that "[d]issolving a desegregation decree after the local authorities have operated in compliance with it for a reasonable period of time properly recognizes that 'necessary concern for the important values of local control of public school systems dictates that a federal court's regulatory control of such systems not extend beyond the time required to remedy the effects of past intentional discrimination.'"[25] "[F]ederal supervision of local school systems was intended as a temporary measure to remedy past discrimination."[26] The 1974 Order clearly contemplated that the case would be dismissed in a matter of years, not decades. The inquiry is "whether the vestiges of *de jure* segregation had been eliminated as far as practicable."[27] As our court has recently affirmed, "'[o]nce the racial imbalance . . . due to the *de jure* violation has been remedied, the school district is under no duty to remedy imbalance that is caused by demographic factors.'"[28]

\*     \*     \*

For the foregoing reasons, we AFFIRM the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

[24] *Dowell*, 498 U.S. at 248.

[25] *Id*. (quoting *Spangler v. Pasadena City Bd. of Educ.*, 611 F.2d 1239, 1245 n.5 (9th Cir. 1979) (Kennedy, J., concurring)).

[26] *Id.* at 247-48.

[27] *Id.* at 250.

[28] *Anderson v. Sch. Bd. of Madison Cnty.*, 517 F.3d 292, 299 (5th Cir. 2008) (quoting *Freeman v. Pitts*, 503 U.S. 467, 494 (1992)).