# United States Court of Appeals for the Fifth Circuit

————————

No. 25-30075

————————

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2026

Lyle W. Cayce
Clerk

Joshua J. Navy, *Individually, on behalf of* J.N.; Waynisha D. Navy, *Individually, on behalf of* J.N.; Ashley Mayfield, *Individually, on behalf of* M.D.P.M., A.E.P.M., and A.M.P.M; Michael Mayfield, *Individually, on behalf of* M.D.P.M., A.E.P.M., and A.M.P.M,

*Plaintiffs—Appellees*,

*versus*

School Board of St. Mary Parish,

*Defendant—Appellant*.

————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:65-CV-11351

————————————————————

Before Elrod, *Chief Judge*, and Smith and Wilson, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

In 1965, the School Board of St. Mary Parish was placed under a permanent injunction to ensure desegregation of its schools. After twenty years of enforcement by the named representatives of the alleged class action, the named representatives made no more requests to modify the injunctions until 2019, when new named representatives were placed in charge of the case and sought to modify the injunction.

No. 25-30075

The Board filed a motion to dissolve the injunction on account of alleged procedural infirmities and filed a motion to dismiss or strike the motion to modify the injunction for largely the same reasons. The district court denied the motion and refused to let the Board present evidence per Federal Rule of Civil Procedure 60(b)(5) at an evidentiary hearing. This appeal followed. We dismiss the appeal for want of appellate jurisdiction because the denial of the motion to dismiss or strike did not have the practical effect of continuing, modifying, or refusing to dissolve the injunction.

## I. The Original Plaintiffs

In 1965, Claude Boudreaux and Shelby Bourgeois ("the original plaintiffs") sued the public schools in St. Mary Parish, Louisiana. The complaint sought a preliminary and permanent injunction and states that the Plaintiffs brought "this action as a class suit pursuant to Rule 23(a)(3)." The Board sent a letter that stipulated that the plaintiffs were sufficiently numerous and asserted that the "plaintiffs are, therefore, under the law entitled to bring this suit as a class action."

In late 1965, the district court[1] granted judgment on the pleadings in favor of the original plaintiffs, granted an injunction on the basis of a portion of the prayers for relief, and deferred "action on the request for immediate desegregation of teaching and administrative staff, which question is reserved for future determinations." In 1966, the original plaintiffs filed a Motion for Further Relief seeking to desegregate teaching and administrative staff. In 1967, the Fifth Circuit decided a consolidated appeal, and the district judge replaced the previous decree with the decree from the Fifth Circuit.

The new decree required the Board to report demographic data two

---

[1] Because the case takes place over the course of decades, the judges at the district court changed several times. For clarity, this opinion will just refer to "the district court."

2

times a year and eliminate "the effects of the dual school system," including desegregation of faculty; the district judge required the parties to make applications to the court whenever issues arose. After a decision of the Supreme Court and the Fifth Circuit, respectively, required changes to the desegregation plan, the district court adopted the Board's proposal to integrate, with some alterations, and found that "the school desegregation plan proposed by the defendants, with the modifications hereinafter set forth, conforms with the requirements imposed upon the defendants by the Fourteenth Amendment . . . and will [ ] disestablish the defendants' dual system of schools." The decree maintained the permanent injunction.

The original plaintiffs sought modification in 1970 and 1971 for the Board's failure to meet the decree. In 1975, the district court gave the original plaintiffs 30 days to file objections to the Board's most recent report, stating that the court "shall, in the absence of such objections, declare said system unitary and direct the matter be placed on the inactive docket." A search of the record reveals no objections but also no order declaring the system unitary. The only other modification to the plan occurred when the parties jointly sought modification for construction and shuffling grades among schools in the early 1980s.

In 2012, the district court *sua sponte* entered final judgment of dismissal with prejudice. It then *sua sponte* vacated and set aside that same judgment. In 2018, attorney Gideon Carter moved to become the original plaintiffs' new lawyer, stating that "he desire[d] to enroll as 'Trial Attorney' for the Boudreaux plaintiffs." Carter described himself as "appointed local counsel for Private Plaintiffs."[2] He obtained *pro hac vice* admission of NAACP lawyers. In 2019, the Board moved to dismiss for want of subject

---

[2] The record reveals no such appointment or any connection to the old plaintiffs.

matter jurisdiction, and the lawyers moved to replace the original plaintiffs with the new ones, which the district court granted.

## II. The New Plaintiffs

After permitting the substitution and denying the motion to dismiss, the district court stated that the class should be recertified, even though it held that there was an implied class action. It also recognized the "factors undercutting its decision," including but not limited to the "failure of the parties and the Court to expeditiously move this case to resolution," contrary *dicta* from the Fifth Circuit and the Supreme Court, and the changing times and law. The court concluded that it would then look favorably on a request to certify the matter for interlocutory appeal.

The record reveals no attempt by the Board to appeal at that stage, and the briefs do not indicate that the Board appealed. In 2020, the district court certified the class, and the Board re-urged its disagreement.

Then there were six years of discovery, with a pause for COVID and unsuccessful negotiations. The dispositive motions stage was reached in the fall of 2024. The Board moved to dismiss the complaint for lack of subject matter jurisdiction and to dissolve the decrees under Rule 60(b)(5) or *Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237 (1991). The new plaintiffs filed a motion for further relief in response, opposing the Board's motion and requesting to expand the decrees. The Board moved to strike or dismiss the motion for further relief.

The district court issued a bench ruling in January 2025 (the "January Ruling"), denying the Board's motion to strike or dismiss the motion for further relief. The January Ruling had to be clarified in a subsequent order. The Board appealed.

The district court also entered an order clarifying that the Board could not address Rule 60(b)(5) at an upcoming hearing on the Board's dispositive

No. 25-30075

motion in February 2025 ("February Order"). The board appealed that ruling as well, and the appeals were consolidated.

## Discussion

The Board raises eight issues on appeal, but those can be reduced to two questions: 1. Has the district court's jurisdiction lapsed? 2. Should the new plaintiffs' claims be dismissed? Because we are without appellate jurisdiction, we address neither question.

## I. Jurisdiction

The threshold question is whether this court has jurisdiction to consider the appeal.[3] Title 28 U.S.C. § 1292(a)(1) grants the courts of appeals jurisdiction of appeals from "[i]nterlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." "This provision applies to orders that explicitly grant, continue, modify, refuse, or dissolve injunctions or that refuse to dissolve or modify injunctions, as well as to those that have the practical effect of doing so." *Thomas ex rel. DMT v. Sch. Bd. St. Martin Par.* 756 F.3d 380, 384 (5th Cir. 2014). "Unless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981).

### A. January Ruling

This court does not have jurisdiction to entertain the appellant's chal-

---

[3] *See Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998) ("[W]e are obligated to satisfy ourselves that appellate jurisdiction is proper.").

lenge to the January Ruling.

1.

The new plaintiffs claim that there is no jurisdiction for this court to hear the appeal because the January Ruling does not present an appealable issue under § 1292(a)(1). They suggest that the Board is "asking this [c]ourt to review ancillary case-management and administrative decisions from the [d]istrict [c]ourt, which are not appropriate for interlocutory review." They cite *Gulfstream Aerospace Corp. v. Mayacamas Corp.* for the proposition that a lower court order "that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." 485 U.S. 271, 279 (1988).

The new plaintiffs contend that the denial of the motion to strike or dismiss the motion for further relief did not impact the injunction. Instead, it "simply allowed the Plaintiff Class's pleading to remain on the docket." The new plaintiffs claim that *Spangler v. United States*, a case relied on by the Board for jurisdiction, permits an appeal only where the order substantively has the effect of denying "the government its right to the prohibitory and mandatory injunctions sought by its complaint." 415 F.2d 1242, 1247 (9th Cir. 1969).

In comparison, the new plaintiffs reiterate that the denial allowed the motion to stay on the books. They conclude by claiming that the Board's theory that the January Ruling is appealable because it is inextricably intertwined with the injunction fails because the district court has not yet ruled on the Board's dispositive motion.

The Board asserts that there is jurisdiction in light of precedent in desegregation cases under any interpretation of § 1292(a)(1). The Board contends that the new plaintiffs fundamentally misunderstand the nature of institutional reform cases, which will "never have a final-judgment appeal"

because the ultimate goal of institutional-reform cases is to return control to local authorities. The Board then cites *Thomas v. School Board St. Martin Parish*, 756 F.3d 380 (5th Cir. 2014), for the proposition that § 1292(a)(1) applies to orders that have the practical effect of continuing, modifying, or refusing to dissolve an injunction.

The Board concludes by asserting that the finality framework easily supports jurisdiction. It claims that the "most direct path" to recognizing jurisdiction is that the January bench ruling "pledge[d] to apply *Dowell* in each of the '*Green* factors' as 'the governing law,'" which functions as a refusal to dissolve the injunction under Rule 60(b)(5) and a practical refusal to dissolve injunctions for lack of "Article III jurisdiction." The Board avers that this conclusion is consistent with *Gulfstream*, which noted that the practical effect rule is determined on the substance of the action. The Board asserts that it seeks "nothing more than this Court's review (and reversal) of the district court's pure legal holding that *Dowell* is the *only* 'governing law' for ending desegregation cases."

2.

This court does not have jurisdiction over the January Ruling because it is not an order that has the practical effect of continuing, modifying, or denying the dissolution of the injunction. The Board's assertion that the denial of its motion to strike or dismiss the new plaintiffs' relief has the practical effect of continuing, modifying , or refusing to dissolve the injunction is incorrect because the January Ruling, in and of itself, does nothing but maintain the *status quo* with regard to the injunction. The January Ruling does not affirmatively continue the injunction in any practical sense or change its operation from what it was in previous decades.

The precedents that the Board singles out as exemplars of the breadth of this court's jurisdiction over interlocutory orders undermines its case as

to the January Ruling.  For example, in *Thomas*, 756 F.3d at 384, we found an order denying a motion to dismiss sufficient, but that motion "implicitly argued that the injunction in the 1974 Order was—and, in any event, should be—dissolved."  That is more analogous to the Board's actual motion to dissolve than it is to its motion to dismiss the plaintiff's request for expanded relief, which makes oblique references to dismissing the action.  Likewise, in *Moore v. Tangipahoa Parish School Board*, the denial of a Rule 60(b) motion was in relation to a direct modification of the injunction, meaning that there was no question whether the order modified the injunction.  *See* 843 F.3d 198, 200 (5th Cir. 2016).

The existence of the motion to dissolve, in and of itself, counsels against a finding that the January Ruling had the practical effect of continuing, modifying, or denying the dissolution of the injunction because the district court will affirmatively speak on whether it will, in fact, deny the Board's motion to dissolve the injunction or allow the injunction to continue.[4]  Furthermore, the Board seems to believe that an order having the practical effect of denying *a reason* for dissolving an injunction is the same as an order having the practical effect of actually denying the dissolution.  That is not so.

For example, if there were a motion to dissolve an injunction on the grounds of jurisdiction and standing and a decision of the district court on a related matter leads to the conclusion that it has jurisdiction, it does not then follow that that decision had the practical effect of continuing, modifying, or denying the dissolution of the injunction, given that standing remains a basis

---

[4] That ruling may be long overdue, and we trust that the district court will move expeditiously to rule on efforts to change or modify the injunction.

No. 25-30075

for dissolving the injunction.[5]  It is uncontested that the Board's *Dowell* claims remain pending before the district court and could be the grounds on which it modifies, continues, or dissolves the injunction.[6]

### B. February Order

The same substantive law applies to the February Order as to the January Ruling.  This court does not have jurisdiction over the February Order. The Board claims that "if the district court's forthcoming order does not address the Board's Rule 60(b)(5) arguments . . . then the February Order's prohibition on including Rule 60(b)(5) has the practical effect of refusing those dissolution arguments."  The board gives away the game in that very sentence.  Again, it states "*if* the district court's forthcoming order does not address" the Board's contentions, then it will have the practical effect of refusing them.

If the practical effect of a denial is still contingent at that point, the February Order could not be the point in which any practical continuance, modification, or denial of the dissolution of the injunction would have occurred.  The Board's challenges concerning Rule 60(b)(5), as well as any of the other points urged regarding the injunction, would properly be before this Court on any appeal of the district court's ruling on the motion to dissolve the injunction.

### Conclusion

Because neither of the appealed orders has the practical effect of con-

---

[5] *See Spangler*, 415 F.2d at 1247 ("[T]he district court . . . in substance denied the government *its right to the prohibitory and mandatory injunctions* sought by its complaint in intervention.").

[6] Because the January Ruling does not have the practical effect of denying dissolution of the injunction, we need not discuss the irreparable-consequence and effective-challenge prongs.

No. 25-30075

tinuing, modifying, or refusing to dissolve the injunction, the appeal is DISMISSED for want of appellate jurisdiction.